UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DANNY J. SETSER,<br><br>               Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security, [1]<br><br>               Defendant. | Case No. 3:12-cv-05520-BHS-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for October 25, 2013 |

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be reversed and this matter be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On July 25, 2008, plaintiff filed an application for SSI benefits, and on August 14, 2008,

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration. Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the Defendant in this suit. **The Clerk of Court is directed to update the docket accordingly.**

REPORT AND RECOMMENDATION - 1

he filed another one for disability insurance benefits, alleging in both applications that he became disabled beginning December 31, 2000, due to social anxiety, depression and chronic stuttering. See ECF #11, Administrative Record ("AR") 20, 161. Both applications were denied upon initial administrative review on October 14, 2008, and on reconsideration on January 22, 2009. See AR 20. A hearing was held before an administrative law judge ("ALJ") on March 24, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 35-65.

In a decision dated May 5, 2010, the ALJ determined plaintiff to be not disabled. See AR 20-30. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on April 13, 2012, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; see also 20 C.F.R. § 404.981, § 416.1481. On June 25, 2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #3. The administrative record was filed with the Court on December 4, 2012. See ECF #11. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical opinion evidence in the record; (2) in discounting plaintiff's credibility; (3) in assessing his residual functional capacity; and (4) in finding him to be capable of performing other jobs existing in significant numbers in the national economy. For the reasons set forth below, the undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but recommends that while defendant's decision to deny benefits should be reversed, this matter should be remanded for further administrative proceedings.

REPORT AND RECOMMENDATION - 2

DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must

REPORT AND RECOMMENDATION - 3

I.      The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can

---

> scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 4

only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

The record contains a state agency psychological/psychiatric evaluation form completed in late April 2004, by Deborah S. Haynes, M.D., who, based on her evaluation of plaintiff, found he had a marked limitation in his ability to relate appropriately to co-workers and supervisors and in his ability respond appropriately to and tolerate the pressure and expectations of a normal work setting, and a moderate limitation in his ability to interact appropriately in public contacts. See AR 229.  She assessed the same marked limitations in another psychological/psychiatric evaluation form she completed in early September 2004. See AR 225.  In late February 2005,

REPORT AND RECOMMENDATION - 5

Allen W. Ratcliffe, Ph.D., also evaluated plaintiff and completed the same evaluation form, in which he too found plaintiff to be markedly limited in the above two areas of social functioning, as well as in regard to the ability to interact appropriately in public contacts and to control his physical or motor movements and maintain appropriate behavior. See AR 234.  Between late August 2005, and late June 2008, six additional psychological/psychiatric evaluation forms were completed by Bruce Eather, Ph.D., based on his evaluations of plaintiff, in five of which he assessed plaintiff with moderate to marked limitations in the above social functioning areas. See AR 238, 247, 256, 266, 276, 286.

The record further contains a mental residual functional capacity assessment form dated October 14, 2008, and signed by Vincent Gollogly, Ph.D., a non-examining, consultative psychologist, in which it was opined that plaintiff could "handle limited public contact," but "would do best in [a] position with no public contact," and that he "may have difficulty coping with change," but still "retains the capacity for productive tasks." AR 310.  Finally, another state agency psychological/psychiatric evaluation form was completed in early May 2009, by Kristi Breen, Ph.D., who, following her evaluation of plaintiff, found him to have marked limitations in his ability to relate appropriately to co-workers and supervisors, interact appropriately in public contacts, and respond appropriately to and tolerate the pressure and expectations of a normal work setting, as well as a moderate limitation in the ability to control his physical or motor movements and maintain appropriate behavior. See AR 316.

In regard to the above medical opinion evidence, the ALJ found in relevant part:

> I give great weight to [Dr. Gollogly's] mental assessment because it is the most thorough and most consistent with the evidence of record as a whole.  I am not bound by the findings of any state psychologist/psychiatrist . . . I find Dr. Gollogly's opinion superior to those made by Dr. Haynes, Dr. Ratcliffe, and Dr. Eather because Dr. Gollogly's opinion is founded upon a more detailed review of the claimant's limited medical records.  Moreover, Dr.

REPORT AND RECOMMENDATION - 6

> Gollogly provided clear and convincing explanations in supporting his opinion.  Dr. Breen's evaluation performed in May 2009 is the only one performed after Dr. Go[l]logly's assessment.  Despite noting that [the] claimant had alcohol abuse problem [sic], Dr. Breen has not opined that the claimant is more limited than determined by Dr. Gollogly, except he opined that the claimant had no difficulty following instructions but he had difficulty with verbal responses (Exhibit 9F).  I agree with Dr. Breen that the claimant has additional limitations because of his stuttering disorder and he has to work in a job where no immediate verbal response is required.  I also agree with Dr. Eather's comment that the claimant's shuttering [sic] precluded jobs with significant social interaction (Exhibit 3F, p. 4).

AR 28.  Plaintiff argues these are not valid reasons for rejecting the opinions of Dr. Haynes, Dr. Ratfcliff, Dr. Eather, and Dr. Breen.  The undersigned agrees.

It may be true that the ALJ is not bound by the opinions of Drs. Haynes, Ratcliff, Eather and Breen, but as examining psychologists/psychiatrists their opinions in general are entitled to more weight than that of Dr. Gollogly, a non-examining psychologist. See Lester, 81 F.3d at 830-31.  In addition, while it also may be that Dr. Gollogly based his opinion "upon a more detailed review" of plaintiff's medical records (AR 28) – not surprisingly since as *examining* medical sources, Dr. Haynes, Dr. Ratcliffe and Dr. Eather were much more likely to have relied on their own clinical findings and observations of plaintiff – there is nothing to indicate the *opinion* of Dr. Gollogly was any more detailed than those of Drs. Haynes, Ratcliffe and Eather.  Rather, it appears the opposite is true. See AR 223-41, 245-50, 254-59, 263-70, 274-80, 284-88, 313-19.  Other than the findings and opinions of these three medical sources and those of Dr. Breen, furthermore, the objective medical evidence in the record is fairly minimal, as the ALJ himself admits. See AR 26, 28.  Given the lack of *other* objective medical evidence in the record, therefore, it is unclear as to exactly how Dr. Gollogly's opinion constitutes substantial evidence. See Tonapetyan, 242 F.3d at 1149; Lester, 81 F.3d at 830-31.

The ALJ goes on to state Dr. Gollogly "provided clear and convincing explanations in

REPORT AND RECOMMENDATION - 7

supporting his opinion." AR 28.  But Dr. Haynes, Dr. Ratcliffe and Dr. Eather provided clinical findings and statements in support of their opinions as well (see 223-41, 245-50, 254-59, 263-70, 274-80, 284-88, 313-19), none of which the ALJ has shown to be any less lacking in legitimacy.  As such, it again is unclear as to exactly why the ALJ believed the support provided by Dr. Gollogly was clear and convincing, but that given by the above examining medical sources did not rise to that level.  The ALJ also is incorrect in stating Dr. Breen did not find plaintiff to be more limited than Dr. Gollogly.  For example, although Dr. Gollogly found mostly moderate mental functional limitations (see AR 308-10), as noted above, Dr. Breen opined that plaintiff had marked limitations in his ability to relate appropriately to co-workers and supervisors, interact appropriately in public contacts, and respond appropriately to and tolerate the pressure and expectations of a normal work setting. See AR 316.

      Plaintiff further argues the ALJ erred by failing to fully and fairly develop the record.  In particular, plaintiff notes that while the mental residual functional capacity assessment form Dr. Gollogly signed indicates the record that was reviewed contains nine psychological/psychiatric evaluations along with one evaluation from a "prior claim," the record does not actually contain that "prior claim" evaluation. AR 310.  An ALJ has the duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan, 242 F.3d at 1150 (citations omitted).  However, it is only where there is "[a]mbiguous evidence" or the ALJ has found "the record is inadequate to allow for proper evaluation of the evidence," that the ALJ's duty to "conduct an appropriate inquiry" is triggered. Id. (citations omitted); see also Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001).  Here, to the extent that the prior claim evaluation does exist and was not made part of the current record, the undersigned finds the ALJ committed no error in failing to more fully develop the record.  This is because no showing has been made

REPORT AND RECOMMENDATION - 8

that the medical evidence is ambiguous, and the ALJ has not found the record to be inadequate. This does not mean, though, that on remand this issue should not be looked into further to ensure that all relevant evidence has been included in the record.

II.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of

REPORT AND RECOMMENDATION - 9

symptoms. See id.

  The ALJ in this case discounted plaintiff's credibility for the following reasons:

> The claimant's allegation of total disability due to mental impairments is partly credible. His shuttering [sic] was evidence at the hearing. The claimant explained that he shuttered [sic] before when he was still working but it had been worsened with anxiety. His hands also shook with nervousness when he was in the public with other people. However, I noted that his shuttering [sic] was not as pronounced as we proceeded through the hearing. Considering the hearing as a stressful event, the claimant was still able to respond and answer all of the questions posed to him by myself and his representative.
>
> The undersigned find [sic] that the case lacks objective evidence. The record does not contain evidence that the claimant has followed up or sought further treatment after August 2008. This suggests that the mental symptoms may not have been as serious as has been alleged in connection with this application and appeal.[3] . . .

AR 28-29. The undersigned agrees the ALJ failed to provide clear and convincing reasons for finding plaintiff to be not fully credible here.

  The ALJ may rely on a claimant's demeanor at the hearing as a basis for discrediting his or her testimony. Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002); Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992). Inclusion of personal observations of the claimant in the ALJ's findings, therefore, "does not render the decision improper." Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). However, the ALJ may not reject a claimant's subjective complaints "solely on the basis of" personal observations. SSR 95-5p, 1995 WL 670415 *2. Similarly, although the ALJ may discount a claimant's credibility as well on the basis that the claimant's subjective complaints are inconsistent with the objective medical evidence in the record, the ALJ may not do so solely for this reason. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir.2001);

---

[3] In a footnote, the ALJ further stated: "Other than [the state agency] evaluations for public assistance, there is no evidence that the claimant has pursued any low-income health care options, which one might expect if the claimant truly were unable to work due to the symptoms alleged in this case." AR 29, n. 1.

REPORT AND RECOMMENDATION - 10

Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir. 1995); Orteza v. Shalala, 50 F.3d 748, 749-50 (9th Cir. 1995); Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir.1991).

As discussed above, the ALJ erred in evaluating the objective medical evidence in the record concerning plaintiff's mental impairments and limitations. Accordingly, reliance on that evidence to discount plaintiff's credibility here was improper. The undersigned finds no error in the ALJ's reliance on his own personal observations of plaintiff's demeanor at the hearing, since this was well within his authority to do so, and there is no indication that his description of that demeanor is inaccurate. The only remaining stated reason for discounting plaintiff's credibility is his failure to pursue "low-income health care options." AR 29 n. 1.

Failure to assert a good reason for not seeking treatment "can cast doubt on the sincerity of the claimant's" subjective complaints. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). But the undersigned agrees with plaintiff that the ALJ did not adequately consider the reasons for his failure to pursue such options. First, it is not entirely clear that those options would be available at the level plaintiff requires. See AR 235 ("Adequate and sufficient mental health treatment may not [be] available through the Pierce County RSN at this time."). There also is some indication in the record that the mental health treatment plaintiff did receive was not helpful or was of only limited benefit. See AR 232, 238-39, 256, 276, 289. The record further indicates plaintiff may have only limited insight into his condition that may inhibit his ability to seek treatment. See AR 240, 249, 258, 269, 279, 318; but see AR 231, 288. Thus, given that the ALJ's observation of plaintiff's demeanor remains the only validly-supported reason for discounting his credibility, the undersigned finds the ALJ's credibility determination cannot be upheld.

III.   The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a

REPORT AND RECOMMENDATION - 11

claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ found plaintiff had the residual functional capacity:

**. . . to perform a full range of work at all exertional levels but with the following nonexertional limitations: He can perform simple, routine tasks and follow short, simple instructions. He can do work that needs little or no judgment. He can perform simple duties that can be learned on the job in a short period. He will have average ability to perform sustained work activities (i.e.[,] can maintain attention and concentration; persistence and pace) in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) within customary tolerances of employers rules regarding sick leave and absence. He can have occasional interaction with co-**

REPORT AND RECOMMENDATION - 12

> **workers and supervisors. He can work in close proximity to co-workers but not in a cooperative or team effort. He can respond appropriately to supervision, co-workers and work situations; and deal with occasional work setting changes. He will not deal with the general public as in a sales position or where the general public is frequently encountered as an essential element of the work process. Incidental contact with the general public is not precluded. He can communicate with co[-]workers, supervisors and the public but not in jobs where communications are required under stressful or emergency situations. He has to work in a job where no immediate verbal response is required unless clarification of instructions or orders is needed.**

AR 25 (emphasis in original). Plaintiff argues that in light of the ALJ's errors in evaluating the medical opinion evidence from Dr. Haynes, Dr. Ratcliffe, Dr. Eather, and Dr. Breen, as well as in discounting his credibility, this RFC assessment is not supported by the substantial evidence in the record. The undersigned agrees. Given the ALJ's errors it is not at all clear that that residual functional capacity assessment includes all of plaintiff's mental limitations. For example, it does not necessarily adequately encompass the significant limitations Drs. Haynes, Ratcliffe, Eather, and Breen found in plaintiff's ability to relate appropriately to co-workers and supervisors, in his ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting or in his ability to maintain appropriate behavior.

IV.     The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

REPORT AND RECOMMENDATION - 13

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed hypothetical questions to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 56-60. In response to those questions, the vocational expert testified that an individual with such limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. See AR 56-60. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. See AR 29-30.

Plaintiff argues, and once more the undersigned agrees, that because the RFC assessment the ALJ gave was erroneous, the testimony of the vocational expert based on that assessment is not supported by substantial evidence, and therefore the ALJ erred in relying on that testimony to find plaintiff not disabled here at step five. Plaintiff further argues that in light of the vocational expert's additional testimony that if the above hypothetical individual missed more than 44 hours of work per year, then that individual would not be able to sustain employment (see AR 61), the ALJ should have found him to be disabled. While plaintiff asserts this additional work limitation is consistent with a marked limitation in the ability to tolerate the pressures and expectations of a

REPORT AND RECOMMENDATION - 14

normal work setting, as well as with his own testimony about how he becomes anxious around other people, it is not at all clear that this is so, particularly as none of the above medical sources gave any indication as to the number of hours of work, if any, they believed that limitation would cause plaintiff to miss. As such, the undersigned declines to find the ALJ should have adopted it or found plaintiff disabled on that basis.

Plaintiff goes on to argue that the ALJ erred by not asking the vocational expert whether his testimony was consistent with the information contained in the Dictionary of Occupational Titles (the "DOT"), and by not obtaining a reasonable explanation for the inconsistency that was identified at the hearing from the vocational expert. The ALJ may rely on vocational expert testimony that "contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). The ALJ, furthermore, has the affirmative responsibility to ask the vocational expert about possible conflicts between her testimony and information in the DOT. Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704. Before relying on evidence obtained from a vocational expert to support a finding of not disabled, therefore, the ALJ must "elicit a reasonable explanation for any discrepancy" with the DOT. Haddock, 196 F.3d at 1087; SSR 00-4p, 2000 WL 189704 *1. The ALJ also must explain in his or her decision how the discrepancy or conflict was resolved. SSR 00-4p, 2000 WL 189704 *4.

The undersigned finds any error on the part of the ALJ here to be harmless.[4] While it is true that the ALJ did not specifically ask the vocational expert about possible conflicts with the DOT at the hearing, as plaintiff himself points out the vocational expert nevertheless informed the ALJ that his testimony was inconsistent with the DOT. Specifically, the vocational expert

---

[4] See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); see also Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").

REPORT AND RECOMMENDATION - 15

testified that the jobs he identified could be learned much quicker than indicated by the DOT, and therefore could be performed by the hypothetical individual the ALJ presented. See AR 57-59. Further, as the Ninth Circuit has stated:

> An ALJ may take administrative notice of any reliable job information, including information provided by a [vocational expert]. . . . A [vocational expert]'s recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required.

Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (internal citation omitted). The ALJ in this case testified that based on his experience the jobs he identified could be performed quicker than indicated by the DOT. See AR 58-59. Under Bayliss, this is sufficient. Thus, although the ALJ erroneously stated in his decision that the vocational expert's testimony did not conflict with the DOT (see AR 30), this error too was harmless.[5]

V.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan

---

[5] The undersigned also finds harmless any error the ALJ made in mischaracterizing in his decision the hypothetical question he posed to the vocational expert at the hearing, as plaintiff has failed to establish any prejudice or how this error otherwise affected the ALJ's ultimate disability determination. See AR 30.

REPORT AND RECOMMENDATION - 16

v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Although the ALJ failed to provide adequate reasons for rejecting much of the medical opinion evidence in the record indicating the potential existence of greater mental functional limitation, as well as for discounting plaintiff's credibility concerning his subjective complaints, issues still remain as to exactly what mental functional limitations plaintiff should be assessed with, as well as the vocational impact those limitations would have.

It is true that where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating or examining physician," that opinion generally is credited "as a matter of law." Lester, 81 F.3d at 834 (citation omitted).  "But applying [this 'credit-as-true'] rule is not mandatory when, even if the evidence at issue is credited, there are 'outstanding issues that must be resolved before a proper disability determination can be made.'" Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir. 2010) (quoting Vasquez v. Astrue, 572 F.3d 586, 593 (9th Cir.2009)); see also Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003).  Such is the case here.  Thus, for example, the evaluation forms completed by Dr. Haynes, Dr. Ratcliffe, Dr. Eather and Dr. Breen show that they are not entirely in agreement about the extent of severity of plaintiff's limitations in social functioning. See AR 225, 229, 234, 238, 247, 256, 266, 276, 286, 316.  Indeed, even Dr. Eather's evaluation forms do not entirely agree with each other in terms of the mental functional limitations he assessed. See AR 238, 247, 256, 266, 276, 286.  In addition, "[i]n cases where the

REPORT AND RECOMMENDATION - 17

vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence," the Ninth Circuit "consistently [has] remanded for further proceedings rather than payment of benefits." <u>Bunnell</u>, 336 F.3d at 1116. Here too the specific limitations Drs. Haynes, Ratcliffe, Eather, and Breen assessed were not adequately addressed – or it seems addressed at all – by the vocational expert at the hearing.

It is also true that the Ninth Circuit has held remand for an award of benefits is required where the ALJ's reasons for discounting the claimant's credibility are not legally sufficient, and "it is clear from the record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's testimony." <u>Connett v. Barnhart</u>, 340 F.3d 871, 875 (9th Cir. 2003). The Court of Appeals in <u>Connett</u> went on to state, however, it was "not convinced" the "crediting as true" rule was mandatory. <u>Id.</u> Thus, at least where findings are insufficient as to whether a claimant's testimony should be "credited as true," it appears the courts "have some flexibility in applying" that rule. <u>Id.</u>; <u>but see</u> <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004) (applying "crediting as true" rule, but noting its contrary holding in <u>Connett</u>).[15]

While as discussed above the ALJ did err in discounting plaintiff's credibility, that error was based in part on the ALJ's failure to adequately consider whether plaintiff had good reasons for not seeking low cost mental health treatment options. Also as discussed above, however, the evidence in the record as to the existence of such reasons is far from conclusive. Accordingly, it may be that this stated basis for finding plaintiff less than fully credible, along with the ALJ's observation of plaintiff's demeanor at the hearing, will ultimately support the ALJ's credibility

---

[15] In <u>Benecke</u>, the Ninth Circuit found the ALJ not only erred in discounting the claimant's credibility, but also with respect to the evaluations of her treating physicians. 379 F.3d at 594. The Court of Appeals credited both the claimant's testimony and her physicians' evaluations as true. <u>Id.</u> It also was clear in that case that remand for further administrative proceedings would serve no useful purpose and that the claimant's entitlement to disability benefits was established. <u>Id.</u> at 595-96.

REPORT AND RECOMMENDATION - 18

determination here after all.  That remains to be seen on remand.  The undersigned, therefore, declines to apply the credit as true rule in this instance as well.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled.  Accordingly, the undersigned recommends as well that the Court reverse defendant's decision to deny benefits and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **October 25, 2013**, as noted in the caption.

DATED this 4th day of October, 2013.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 19